IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

MATTIE GRAVES, individually and on                                                    PLAINTIFF
behalf of all wrongful death beneficiaries
of K.C. BATTLES, deceased

v.                                                          CIVIL ACTION NO.: 3:11cv278-DPJ-FKB

HINDS COUNTY, MISSISSIPPI, et al.                                                    DEFENDANTS

ORDER

This section 1983 case is before the Court on motions for summary judgment premised on immunity filed by Defendants Sheriff Malcolm McMillin and Deputy Keith Roberts in their individual capacities [9, 11]. The Court, having considered the memoranda and submissions of the parties, concludes that Sheriff McMillin's motion should be granted and that Deputy Roberts's motion should be granted in part but otherwise denied.

I.      Facts and Procedural History

This case arises from the shooting death of K.C. Battles, a 63-year-old paranoid schizophrenic with a number of alleged physical disabilities who lived with his sister, Plaintiff Mattie Graves. Compl. [1] ¶ 14; Pl.'s Mem. [16] Ex. A, Graves Aff. ¶ 4–5. The shooting occurred during the execution of a lunacy writ by Hinds County Deputy Sheriffs Keith Roberts and Marquette Funchess. Compl. ¶¶ 19, 22; *see* Mot. Summ. J. [11] Ex. E, Lunacy Pleadings. Although the parties dispute the sequence of events that transpired when the deputies arrived at Graves's home, they agree that Roberts ultimately shot Battles four times—including one round to Battles's face. Battles died at the scene. Compl. ¶ 26; Graves Aff. ¶ 17; Mot. Summ. J. [11] Ex. C, Roberts Dep. 76–77.

Graves, proceeding individually and on behalf of all wrongful death beneficiaries of K.C. Battles, filed this case against Hinds County, Mississippi, McMillin, individually and in his official capacity, and Roberts, individually and in his official capacity.  Graves asserts claims under 42 U.S.C. § 1983 as well as a state-law claim for wrongful death.  Defendants McMillin and Roberts have moved for summary judgment on all claims asserted against them in their individual capacities.  The Court has personal and subject matter jurisdiction and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*,

276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little*, 37 F.3d at 1075.  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

III.   Analysis

    A.   Sheriff McMillin's Motion [9]

        1.   Section 1983 claims

McMillin seeks qualified immunity on Graves's § 1983 claims asserted against him in his individual capacity.  Qualified immunity is a shield from individual liability for "'government officials performing discretionary functions . . . as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated.'"  *Good v. Curtis*, 601 F.3d 393, 400 (5th Cir. 2010) (quoting *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). "[Q]ualified immunity generally protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  It is "an entitlement not to stand trial or face the other burdens of litigation."  *Austin v. Johnson*, 328 F.3d 204, 207 (5th Cir. 2003) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

Courts deciding qualified immunity motions employ a two-part test.  *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005).  First, the plaintiff "must claim that the defendants committed a constitutional violation under current law."  *Id.* (citing *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *Palmer v. Johnson*, 193 F.3d 346, 351 (5th Cir. 1999)).  Second, the

plaintiff "must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Id.* "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson v. Upshur Cnty., Tex.*, 245 F.3d 447, 457 (5th Cir. 2001). Thus, "[a]n official is eligible for qualified immunity even if the official violated another's constitutional rights," as long as the conduct was not objectively unreasonable. *Id.* Finally, whether the conduct was objectively unreasonable is an issue of law reserved for the court. *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999). But disputes of material fact will prevent a court from determining the objective reasonableness of an officer's conduct, thereby precluding summary judgment. *Guiterrez v. City of San Antonio*, 139 F.3d 441, 452 n.10 (5th Cir. 1998). Graves fails to show McMillin violated her rights and therefore never surpasses the first prong of the qualified immunity test.[1]

Section 1983 provides a civil cause of action against persons who violate constitutional rights while acting under color of state law. 42 U.S.C. § 1983. It is well-settled that "there is no vicarious or respondeat superior liability of supervisors under § 1983." *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006); *accord Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) ("Under § 1983, however, a government official can be held liable only for his own misconduct.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). Thus, a supervisory official like McMillin "may be held liable [under § 1983] . . . if (1) he affirmatively participates

---

[1] Even if she could meet the first prong, she does not appear to address the second as to her claims against McMillin.

4

in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (citation omitted).

> A supervisor may also be liable for failure to supervise or train if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."

*Id.* (quoting *Goodman v. Harris Cnty.*, 571 F.3d 388, 395 (5th Cir. 2009)).

Graves does not assert that McMillin affirmatively participated in the alleged constitutional violation—the seizure of Battles by lethal force. Instead, she asserts (1) that he can be held vicariously liable for the acts of his deputies, (2) that he failed to provide "a reasonable policy and procedure for the arrest and/or apprehension of lunacy patients" and (3) that he failed to "train his deputies to reasonably arrest and/or apprehend lunacy patients." Pl.'s Mem. [18] at 2, 11–12. Her first argument is at odds with well-settled law disallowing vicarious liability under section 1983. *See Rios*, 444 F.3d at 425. Her insufficient-policy and failure-to-train claims fail for lack of deliberate indifference.

To succeed on either an insufficient-policy or failure-to-train claim, Graves must show that McMillin was deliberately indifferent to violations of constitutional rights. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) ("Liability for failure to promulgate policy and failure to train or supervise both require that the defendant have acted with deliberate indifference."). Deliberate indifference in this context requires "actual or constructive notice that a particular omission in their training program causes . . . employees to violate citizens' constitutional rights." *Porter*, 659 F.3d at 447 (citation and internal quotation marks omitted). To show notice

5

of a deficiency sufficient to establish deliberate indifference, a plaintiff must ordinarily demonstrate "[a] pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1360 (2011); *see Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987) ("[T]he existence of a constitutionally deficient policy cannot be inferred from a single wrongful act.").

Here, no evidence suggests that lethal force was unreasonably deployed in the execution of a lunacy writ on any other occasion, much less that a pattern of constitutional violations occurred. Thus, Graves offers no evidence capable of showing that McMillin acted with deliberate indifference by failing to promulgate a policy, train, or supervise. Graves has failed to meet her burden to "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial'" concerning McMillin's personal involvement or actionable supervisory conduct. *Celotex Corp.*, 477 U.S. at 324. McMillin is therefore entitled to qualified immunity on Graves's section 1983 claims.

        2.        Wrongful-Death Claim

McMillin argues that Graves's wrongful-death claim against him in his individual capacity is subject to and barred by the Mississippi Tort Claims Act ("MTCA"). The MTCA "provides the exclusive remedy against a governmental entity and its employees for acts or omissions which give rise to a suit." *Estate of Williams ex rel. Williams v. City of Jackson*, 844 So. 2d 1161, 1164 (Miss. 2003) (applying MTCA to plaintiff's wrongful death claim against city). The MTCA provides absolute personal immunity to government employees for acts or omissions occurring within the course and scope of employment: "no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's

duties." Miss. Code Ann. § 11-46-7(2). There is "a rebuttable presumption that any act or omission of an employee within the time and at the place of his employment is within the course and scope of his employment." Miss. Code Ann. § 11-46-5(3); *see Estate of Johnson v. Chatelain ex rel. Chatelain*, 943 So. 2d 684, 687 (Miss. 2006). But "if the employee's conduct constituted fraud, malice, libel, slander, defamation or any criminal offense other than traffic violations," the employee was not acting within the course and scope of employment. Miss. Code Ann. § 11-46-5(2).

McMillin was acting within the course and scope of his duties when making the policy or supervision decisions at issue in this case—nothing in the record suggests otherwise. And Graves wholly fails to address immunity with respect to her MTCA claim in her Response. Thus, under the MTCA, McMillin is entitled to immunity from Graves's state-law claim asserted against him in his individual capacity.

Graves nevertheless argues that McMillin can be personally liable, in his individual capacity, "for damages resulting from acts of his deputies." Pl.'s Mem. [18] at 11 (citing *Barrett v. Miller*, 599 So. 2d 559 (Miss. 1992)). Graves bases this argument on a pre-MTCA Mississippi Supreme Court case construing Mississippi Code section 19-25-19 that provides, in part: "All sheriffs shall be liable for the acts of their deputies, and for money collected by them." Miss. Code Ann. § 19-25-19; *see Barrett*, 599 So. 2d at 566, 568. Though not binding, the Mississippi Court of Appeals has concluded that section 19-25-19, which was adopted before the MTCA, only operates if the deputy's acts are actionable. *Jackson v. Payne*, 922 So. 2d 48, 52 (Miss. Ct. App. 2006) ("In order to rely upon Mississippi Code Annotated § 19-25-19 (Supp. 2005),

Jackson must establish liability on the part of O'Neill in accordance with the MTCA, and only then can Sheriff Payne be liable.").

It follows that "[t]he liability imposed on sheriffs pursuant to § 19–25–19 is derivative of that imposed on deputies." *Moore v. Carroll County, Miss.*, 960 F. Supp. 1084, 1089 (N.D. Miss. 1997); *see also Howard v. Tunica Cnty., Miss.*, No. 299cv158-DB, 2000 WL 33907689, at *4 (N.D. Miss. Aug. 8, 2000) (same). "Thus, if a deputy escapes liability pursuant to his statutory immunity, no liability exists to be derivatively placed upon the shoulders of his sheriff." *Id*. As discussed below, Roberts is entitled to personal immunity from suit under the MTCA. Because Roberts may not be held personally liable on Graves's state-law claim, no vicarious liability attaches to McMillin, and Graves's state-law claim against him in his individual capacity should be dismissed.

  B. Deputy Roberts's Motion [11]

    1. Section 1983 Claims

Roberts asserts entitlement to qualified immunity on Graves's § 1983 claims asserted against him in his individual capacity. Graves alleges that Roberts violated Battles's constitutional rights by using excessive force to execute the lunacy writ and that the use of lethal force was objectively unreasonable in light of clearly established law at the time. Roberts "is entitled to qualified immunity at this procedural stage if, under [Graves's] version of events, his use of deadly force was not 'clearly excessive or clearly unreasonable.'" *Reyes v. Bridgwater*, 362 F. App'x 403, 406 (5th Cir. 2010) (citing *Ramirez v. Knoulton*, 542 F.3d 124, 128 (5th Cir. 2008)).

      a.      Constitutional Violation

To establish a claim for use of excessive force under the Fourth Amendment, Graves must prove Battles "(1) suffered some injury which (2) resulted from force that was clearly excessive to the need for force; (3) the excessiveness of which was objectively unreasonable." *Heitschmidt v. City of Houston*, 161 F.3d 834, 839 (5th Cir. 1998) (citing *Ikerd v. Blair*, 101 F.3d 430, 433–34 (5th Cir. 1996)). In the deadly force context, "[a]n officer's use of deadly force is not excessive, and thus no constitutional violation occurs, when the officer reasonably believes that the suspect poses a threat of serious harm to the officer or to others." *Manis v. Lawson*, 585 F.3d 839, 843 (5th Cir. 2009). The focus of the inquiry is "the act that led [the officer] to discharge his weapon." *Id.* at 845.

Here, there is some dispute as to the act leading to Battles's fatal shooting. The parties agree that Graves was waiting outside for the deputies to arrive and retrieve Battles, and that she opened a side door for them to enter her house. Graves Aff. ¶¶ 11–12; Roberts Dep. 63. Roberts stood in the threshold of the doorway and saw that Battles was standing inside the house several feet away, holding a folding knife in his left hand. Roberts ordered Battles, more than once, to drop the knife. Compl. ¶¶ 24, 26; Graves Aff. ¶ 15; Roberts Dep. 64–65, 71. At that point, according to Roberts, Battles raised the knife at or above head level and began advancing towards Roberts at a good gait, and Roberts continued to tell him to drop the knife before opening fire. Roberts Dep. 71–77. Graves, on the other hand, says that Battles "simply stood there looking at Deputy Roberts who was still standing in the door about 16 feet away." Graves Aff. ¶ 16. Roberts then shot Battles four times. Compl. ¶ 26; Graves Aff. ¶ 17; Roberts Dep. 76–77.

Under Graves's version of events, Roberts shot Battles while he was standing across the room from Roberts and therefore "pose[d] no immediate threat to the officer and no threat to others." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985); *see Reyes*, 362 F. App'x at 407 ("The immediacy of the risk presented by a man armed with a kitchen knife at his side is far less than that of a man armed with a gun: a gun can kill instantaneously at the distance that the man shot by the officer in *Ramirez* stood, whereas Ceballos would have had to first either advance toward Bridgwater or at least raise the knife before he could inflict any harm.") (citing *Ramirez v. Knoulton*, 542 F.3d 124, 130 (5th Cir. 2008)). "[A]bsent such a threat," the use of deadly force violates the Fourth Amendment. *Reyes*, 362 F. App'x at 407. Graves's testimony thus raises a fact question as to whether Roberts violated Battles's constitutional rights.

      b.  Clearly Established Law

There is also a fact question as to whether the use of force was objectively unreasonable in light of clearly established law. "The cases on deadly force are clear: an officer cannot use deadly force without an immediate serious threat to himself or others." *Reyes*, 362 F. App'x at 409. Under Graves's version of events, there was no immediate serious threat. "The case presented here is not one where the law is not clearly established but rather one where the facts are not clearly established. As such, summary judgment [is] improper." *Id.*

Because of the disputed material facts regarding the circumstances leading to Battles's shooting, the Court cannot say at the summary judgment stage that the force used was objectively reasonable under the totality of the circumstances. Roberts's motion is therefore denied as to the section 1983 claim, without prejudice to his right to raise qualified immunity as a defense at trial. *See Tarver v. City of Edna*, 410 F.3d 745, 753 (5th Cir. 2005) (affirming denial of qualified

immunity at summary judgment stage because of fact issues and noting that "the trier of fact might ultimately conclude that qualified immunity is warranted because reasonable officers could disagree about whether [the officer's conduct] was not unreasonable under the circumstances").

2. Wrongful-Death Claim

Roberts argues that Graves's wrongful-death claim against him in his individual capacity is subject to and barred by the MTCA. He argues that he was acting "within the course and scope of [his] duties" at the time of the shooting and is therefore entitled to personal immunity from Graves's state-law claim. Miss. Code Ann. § 11-46-7(2). Graves does not contest this legal argument. In fact, she does not respond to Roberts's state-law immunity argument at all, other than to suggest that she is proceeding under § 1983, "not solely [under] common law or statutory laws of Mississippi," and that Roberts therefore errs by "attempt[ing] to pigeon hole Plaintiff's claims into the narrow confines of" the MTCA. Pl.'s Mem. [16] at 5. The Court considers the MTCA claim against Roberts abandoned. *See Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("[Plaintiff's] failure to pursue this claim beyond [the] complaint constituted abandonment."). And Roberts's arguments on the MTCA claim appear meritorious.[2] Graves's state-law claim against Roberts in his individual capacity will therefore be dismissed.

---

[2]Roberts also argues that Graves's state-law claim is time-barred, although he makes his argument under the general tort statute of limitations, rather than the MTCA statute of limitations. Def.'s Mem. [12] at 10 (citing Miss. Code Ann. § 15-1-35 (setting a one-year statute of limitations on certain tort claims)); *see* Miss. Code Ann. § 11-46-11(3) (setting a one-year statute of limitations on claims brought under the MTCA). Applying the proper section, the statute of limitations argument also appears meritorious and results in dismissal of the state-law claim as time-barred.

IV.     Conclusion

For the foregoing reasons, Sheriff McMillin's Motion for Summary Judgment Premised on Immunity [9] is GRANTED and the claims asserted against him in his individual capacity are hereby DISMISSED WITH PREJUDICE.  Deputy Roberts's Motion for Summary Judgment Premised on Immunity [11] is GRANTED IN PART and Plaintiff's state-law claim asserted against him in his individual capacity is hereby DISMISSED WITH PREJUDICE.  Roberts's Motion [11] is otherwise denied.  The parties are instructed to contact the magistrate judge within two weeks of this order to set the case for a status conference.  The magistrate judge may then consider lifting the stay and entering a case management order.

**SO ORDERED AND ADJUDGED** this the 2nd day of July, 2012.

                                              s/ *Daniel P. Jordan III*
                                              UNITED STATES DISTRICT JUDGE